# Illinois Official Reports

## Appellate Court

*People v. Morrow*, 2014 IL App (2d) 130718

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TIMOTHY J. MORROW, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-13-0718 |
| Filed | December 2, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's sentence to 13 years' in prison for aggravated driving under the influence (DUI) was upheld over his contention that the trial court improperly applied his seven prior DUI convictions in aggravation in imposing his sentence even though the prior convictions had already elevated the offense to a Class X felony, since the trial court did not look to the prior convictions in aggravation, but, rather, the court properly considered the prior convictions with regard to defendant's recidivism, the protection of the public, deterrence, his failure to rehabilitate, and defendant's attempt to discount his recidivism as "mistakes." |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 11-CF-2464; the Hon. Brian P. Hughes, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas A. Lilien and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

Panel            PRESIDING JUSTICE BURKE delivered the judgment of the court, with opinion.
Justices Zenoff and Spence concurred in the judgment and opinion.

**OPINION**

¶ 1      Defendant, Timothy J. Morrow, appeals his sentence of 13 years' incarceration for aggravated driving under the influence (DUI) (625 ILCS 5/11-501(d)(2)(E) (West 2010)), a Class X felony based on at least five prior DUI convictions. He contends that the trial court wrongly applied his previous convictions in aggravation during sentencing when they had already elevated the offense to a Class X felony. We determine that the trial court did not apply the previous convictions in aggravation and instead properly discussed them in relation to the nature and circumstances of the offense, defendant's likelihood to reoffend, protection of the public, and deterrence. Accordingly, we affirm.

¶ 2      I. BACKGROUND

¶ 3      Defendant was arrested on July 30, 2011. On October 22, 2012, a jury trial was held. Officer Ryan Rodriguez testified that he observed defendant's vehicle swerve within its lane. When Rodriguez activated his lights, defendant continued to drive and did not pull over until Rodriguez activated his siren. An object was thrown from the passenger-side window, and a partially full can of beer was recovered from the roadside. Defendant exhibited multiple signs of intoxication and failed multiple field sobriety tests. He refused a Breathalyzer test. The jury found defendant guilty.

¶ 4      At sentencing, the State presented evidence that defendant had seven previous DUI convictions between 1987 and 1995. He had 10 total DUI arrests. Two of those charges, in 2005 and 2006, were reduced to reckless driving. He had been sentenced to prison twice before for aggravated DUI and driving while his license was revoked. Defendant also had an alcohol-related conviction of violation of an order of protection in 2003 and an arrest for criminal damage to state-supported property in 2009. In the 2009 incident, defendant was belligerent, disruptive, and profane during an arrest for disorderly conduct. He then threw a boot inside the police station, breaking a ceiling tile. He pleaded guilty to an amended charge of disorderly conduct and was sentenced to conditional discharge. In 2011, 10 days before he was arrested on the current charge, his conditional discharge was revoked and he was sentenced to probation. A petition to revoke probation was pending in that case at the time of sentencing in this case. Defendant was also arrested in 2010 for an alcohol-related offense, and that case was also pending at the time of sentencing. Aside from alcohol-related offenses, defendant had a lengthy history of other offenses.

¶ 5      Referring to the number of DUI arrests, the State argued that defendant was a danger to the public, referring to him as "the grim reaper to every driver on the road." The State noted that, beginning as a juvenile, defendant had spent nearly every year of his life being arrested for offenses related directly or indirectly to alcohol. Pointing to defendant's overall criminal

history, the State argued that defendant was a habitual offender who had squandered chances to change. The State argued that there was a need for deterrence against repeat offenders. Thus, it asked for 15 years' incarceration.

¶ 6 The defense noted defendant's good behavior while out on bond. Defendant apologized and stated that he took responsibility for his actions, but he said that he had simply made mistakes. He also said that he was abused by his stepfather when he was young. He said that he wanted to see his 12-year-old son grow up, that he had paid his debt on his past DUI convictions, and that he had worked for years to get his license back after them. At one point defendant said, "I'm such a drunk."

¶ 7 The trial court noted defendant's candor and that his abuse could have led him to self-medicate with alcohol. However, the court also stated that "there are a number of people in this society that are abused as children and they don't go out to repeatedly violate the driving under the influence of alcohol laws of this state or any state on a repeated basis." The court, specifically referring to defendant's statement that he made mistakes, agreed that everyone makes mistakes but said that he had "made mistake after mistake after mistake the last 25 years." The court then noted defendant's lengthy criminal history from when he was a teenager until he was arrested on the current offense just 10 days after being resentenced on another one.

¶ 8 Noting defendant's statement that he was "such a drunk," the court characterized defendant as perhaps a " 'functional alcoholic' " who could maintain employment and a home yet still commit the same mistakes every year. Noting that it was "assessing risk," the court further noted that defendant had participated in DUI treatment multiple times, but that it had no impact on him. Referring again to defendant's statement that he made mistakes, the court said that the vast majority of offenders "are so impacted by that one arrest, either the public shame or self-reflection how they got there, they never, ever put themselves in that position again. But yet you find yourself here for the eighth violation, the eighth time." Reciting defendant's previous DUI convictions, along with his other convictions, the court stated that all the trips to prison did not slow defendant down. Indicating a concern for public safety and citing the need for deterrence, the court sentenced defendant to 13 years' incarceration. Defendant appeals.

¶ 9                                         II. ANALYSIS

¶ 10 Defendant contends that the court wrongly applied his previous DUI convictions in aggravation during sentencing when they had already elevated the offense to a Class X felony. Thus, defendant argues that his sentence was improperly enhanced twice by the same prior convictions. The State contends that the court properly discussed the previous convictions as part of its consideration of the nature and circumstances of the offense and to address the need for deterrence and public safety.

¶ 11 Defendant concedes that he did not raise the issue at the time of sentencing or in a motion to reconsider, but he argues that the matter is plain error. Unpreserved errors may be reviewed if (1) the evidence was so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) the error was so fundamental and of such magnitude that it affected the fairness of the hearing and challenged the integrity of the judicial process, regardless of the closeness of the

- 3 -

evidence. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Our first step in plain-error review is to determine whether error occurred. *Id.*

¶ 12 A reasoned judgment as to the proper penalty to be imposed must be based on the particular circumstances of each individual case. *People v. Saldivar*, 113 Ill. 2d 256, 268 (1986). "Such a judgment depends upon many relevant factors, including the defendant's demeanor, habits, age, mentality, credibility, general moral character, and social environment [citations], as well as the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant [citations]." (Emphasis and internal quotation marks omitted.) *Id.* at 268-69. These factors also include the defendant's criminal history, the defendant's potential for reform, and the recognized interest in protecting the public and in providing a deterrent. *People v. Wilson*, 257 Ill. App. 3d 670, 704-05 (1993). "The trial court is in the best position to balance the appropriate factors and tailor a sentence to the needs of the case." *Id.* at 704.

¶ 13 However, a factor implicit in the offense of which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense. *People v. Ferguson*, 132 Ill. 2d 86, 97 (1989). Stated differently, a single factor cannot be used both as an element of an offense and as a basis for imposing "a harsher sentence than might otherwise have been imposed." *People v. Gonzalez*, 151 Ill. 2d 79, 83-84 (1992). This prohibition against double enhancements is based on the assumption that, in designating the appropriate range of punishment for an offense, the legislature necessarily considered the factors inherent in the offense. *People v. Rissley*, 165 Ill. 2d 364, 390 (1995).

¶ 14 Whether a trial court relied on an improper factor when sentencing a defendant is a question of law, subject to *de novo* review. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8. Nonetheless, there is a strong presumption that the trial court based its sentencing determination on proper legal reasoning. *People v. Dowding*, 388 Ill. App. 3d 936, 942-43 (2009). "In determining whether the trial court based the sentence on proper aggravating and mitigating factors, a court of review should consider the record as a whole, rather than focusing on a few words or statements by the trial court." *Id.* at 943.

¶ 15 Defendant relies primarily on *Dowding* and *Abdelhadi*, which illustrate when a factor has been improperly used as a double enhancement. In *Dowding*, the defendant was charged with aggravated DUI based on the death of another. At the sentencing hearing, the State, in requesting the maximum term of imprisonment, stated five times that defendant " 'killed someone' " or " 'caused the death of someone.' " *Id.* The State argued that three statutory factors in aggravation applied: (1) the defendant's conduct caused or threatened serious harm; (2) the defendant had a history of prior delinquency or criminal activity; and (3) the sentence was necessary to deter others from committing the same crime. *Id.* In imposing its sentence, the trial court stated in part: " 'The factors in aggravation that I do find apply in this case are, Number 1, that the defendant's conduct caused or threatened serious harm. No question, this defendant's conduct in this offense caused the greatest harm there could be, that is the death of another person.' " *Id.* On appeal, we found that the trial court erred in considering the victim's death as an aggravating factor. We stated that the court "acted well within its bounds" to mention the victim's death when discussing the defendant's failure to accept sufficient responsibility for a serious offense and to comply with the conditions of probation. *Id.* at 944. "However, the court erred where it expressly stated that causing the victim's death was an aggravating factor upon which the sentence was based." *Id.* Observing

that the State also argued the harm caused to the victim as an aggravating factor, we held that "the trial court considered the victim's death as a factor in aggravation and did not merely mention the victim's death in its summary of the circumstances of the case or in stressing the seriousness of the offense." *Id*.

¶ 16    In *Abdelhadi*, the defendant pleaded guilty to aggravated arson based on the threat of harm to others. At sentencing, the State noted that aggravated arson is a Class X felony and argued that the trial court should consider in aggravation: (1) that the defendant's acts endangered or could have endangered other people's lives; (2) the defendant's criminal history; and (3) that the defendant was on probation. In rendering its sentence, the trial court stated: " 'Specifically in aggravation the Court has considered that the conduct caused by the defendant did, in fact, endanger the lives of individuals. That he was on probation at the time of the event. Court has considered his criminal history in aggravation.' " *Abdelhadi*, 2012 IL App (2d) 111053, ¶ 4.

¶ 17    The defendant appealed, contending that his sentence was excessive because the "threat of harm to others" was an improper aggravating factor when that factor was inherent in the offense of aggravated arson. *Id*. ¶ 6. Relying on *Dowding*, we noted that the trial court's recitation of aggravating factors mirrored the factors that the State argued in aggravation, which showed that the trial court did not merely mention the threat of harm to others in its summary of the circumstances of the case or in stressing the seriousness of the offense. Instead, it showed that the trial court actually considered the threat of harm as a factor in aggravation. Even in the presence of other, legitimate aggravating factors, such as the defendant's being on probation at the time of the offense and his criminal history, the trial court's reliance on the threat of harm to others was improper. *Id*. ¶ 12.

¶ 18    In comparison, *People v. Thomas*, 171 Ill. 2d 207 (1996), illustrates when factors inherent in the offense are properly considered not in aggravation but in assessing other, proper factors. In *Thomas*, the trial court considered the defendant's prior convictions as part of his criminal history, when those were also used to establish the defendant's eligibility for Class X sentencing. Our supreme court held that the consideration of the convictions was proper, stating that "while the *fact* of a defendant's prior convictions determines his eligibility for a Class X sentence, it is the *nature and circumstances* of these prior convictions which, along with other factors in aggravation and mitigation, determine the exact length of that sentence." (Emphases in original.) *Id*. at 227-28 (citing *Saldivar*, 113 Ill. 2d at 269). The *Thomas* court found that the trial court properly "reconsidered" the defendant's prior convictions in fulfilling its constitutionally mandated duty to assess his rehabilitative potential in order to fashion an appropriate sentence. *Id*. at 229. The court held that "[t]his exercise of judicial discretion was entirely proper and does not constitute an enhancement." *Id*.

¶ 19    Here, defendant contends that the trial court's repeated remarks regarding his previous convictions constituted a double enhancement. But looking at the record as a whole, it is clear that the court's comments went only to the nature and circumstances of the offense and other proper factors. Unlike in *Abdelhadi* and *Dowding*, the court did not rely on the mere fact that defendant had at least five previous convictions in aggravation to impose a harsher sentence than it would have otherwise imposed. Unlike in those cases, where the court specifically stated that it was considering an element of the offense in aggravation, here the court never specifically stated that it was using the prior convictions in aggravation. Nor did the State ask the court to do so. Instead, the State's arguments to the court and the court's

comments show that it was discussing the prior convictions in order to address defendant's likelihood to engage in criminal activity in the future, his inability to learn from prior punishments, the need for deterrence, and the protection of society. These were legitimate concerns that the court was entitled to consider when imposing a sentence. Indeed, instead of using the prior convictions as a factor in aggravation, the court specifically stated that it was "assessing risk" and it tailored its comments as a response to defendant's attempts to discount his recidivism as a series of "mistakes."

¶ 20 As further evidence that the court was not relying on the mere fact that defendant had at least five previous convictions, the court noted defendant's entire criminal history, which was lengthy, including seven previous DUI convictions and additional alcohol-related offenses. "The mere fact that defendant's sentence was enhanced to a Class X status because of recidivism does not automatically entitle him to a near-minimum sentence." *People v. Gomez*, 247 Ill. App. 3d 68, 74 (1993). It is also appropriate to impose a longer sentence when the defendant has other convictions in addition to those that established his Class X eligibility. See *id*. at 75. Here, defendant's recidivism and failure to rehabilitate were particularly relevant factors, and the court properly considered those to impose an appropriate sentence.

¶ 21 III. CONCLUSION

¶ 22 The trial court did not err when it discussed defendant's prior convictions in relation to the nature and circumstances of the offense, defendant's likelihood to reoffend, protection of the public, and deterrence. Accordingly, the judgment of the circuit court of Lake County is affirmed.

¶ 23 Affirmed.